**Claire McDONALD, et al.,
Plaintiffs, Appellees,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant,
Appellant.**

**No. 87–1261.**

United States Court of Appeals,
First Circuit.

Heard July 28, 1987.
Decided Dec. 8, 1987.

Etzion Brand, Office of General Counsel, Social Sec. Div., Dept. of Health and Human Services, Washington, D.C., with whom Frank L. McNamara, Jr., U.S. Atty., Nicholas C. Theodorou, Asst. U.S. Atty., Boston, Mass., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., were on brief for defendant, appellant.

Sarah F. Anderson, Greater Boston Legal Services, with whom Nancy Lorenz, Greater Boston Legal Services, Boston, Mass., Alan S. Els, Cambridge and Somerville Legal Services, Linda Landry, Neighborhood Legal Services, Lynn, Mass., and Laura Rosenthal, Massachusetts Law Reform Institute, Boston, Mass., were on brief for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, NOONAN* and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal by the Secretary of Health and Human Services (the Secretary) from two remedial orders of the district court that were issued as an aftermath to our 1986 decision on the merits of this class action. *McDonald v. Secretary of Health & Human Services,* 795 F.2d 1118 (1st Cir.1986). In that decision, we reversed the district court and upheld the so-called step 2 severity regulation as construed by the Secretary in his Ruling 85-28. The Supreme Court has also since sustained the step 2 regulation. *Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). While reversing the district court's rejection of the severity regulation, we affirmed its overturning of the Secretary's pre–1984 refusal to consider the combined effects of non-severe impairments. *McDonald,* 795 F.2d at 1126–27.

Upon remand the district court issued the two orders from which the Secretary now appeals. These orders would revitalize disability claims of class members that lay dormant in the administrative pipeline during the pendency of this case. The first order, dated January 29, 1987, directed the Secretary to notify members of the plaintiff class—consisting of Massachusetts residents whose disability claims were administratively denied at step 2 while the litigation challenging step 2 was ongoing—that they could now resume the Secretary's re-

* Of the Ninth Circuit, sitting by designation.

view process, including review of their step 2 denial. The second appealed order, dated April 10, 1986, provided time deadlines and procedures for implementation of the earlier order.

The issue in this appeal is whether the district court had the jurisdiction and authority to direct the Secretary to permit class members who, during the pendency of this case, failed to appeal to the next administrative review level within the allowed 60–day period, to seek such administrative review now.

We sustain the district court.

## I.

Before proceeding, we mention the context in which this narrow issue arises. The appeals before us stem from two federal social security disability benefits programs. Title II of the Social Security Act provides for the payment of insurance benefits to contributors who suffer from physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 & Supp. III). Title XVI provides for the payment of disability benefits to indigent persons under the supplemental security income program. 42 U.S.C. § 1382(a). For both programs, the Secretary of Health and Human Services considers a claimant "disabled" if he or she is unable "to engage in any substantial and gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In order to make such a determination, the Secretary has since 1976 utilized a five-step sequential inquiry that includes the "step 2" inquiry challenged in this case. 20 C.F.R. §§ 404.1520, 416.903 (1986).

An initial determination of the claimant's disabled status is made by a state agency under the authority and supervision of the Secretary. 42 U.S.C. §§ 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903. If the state agency makes a finding of no disability, the applicant has available several levels of administrative review within which to seek a different outcome. In each instance, he or she must request review at the next administrative level within 60 days of receipt of an adverse determination at the preceding level. The prior determination becomes binding if review is not sought within the proper time limits. 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 & Supp. III); 20 C.F.R. §§ 404.904, 404.905(a), 404.-929, 404.967 *et seq.*, §§ 416.1404, 416.1405, 416.1409(a), 416.1429, 416.1467 *et seq.*, §§ 422.01 *et seq.* (1986).

Once having obtained a "final decision" of the Secretary, the claimant may within 60 days obtain judicial review of such decision by bringing a civil action in the federal district court. 42 U.S.C. § 405(g) (1982). *See generally Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *McDonald v. Secretary of Health & Human Services,* 795 F.2d 1118 (1st Cir.1986). In general, section 405(g) provides the only avenue for judicial review of the Secretary's disposition of benefits. *See* page 1089 *infra.*

The plaintiffs instituted this class action for the purpose of challenging, inter alia, the legality of step 2 of the sequential inquiry established in the Secretary's regulations. They initially met with success in the district court, but on appeal this court held that the severity regulations, as interpreted by the Secretary in Ruling 85–28, issued in October 1985, were valid under the Social Security Act as a de minimis screening device. *McDonald,* 795 F.2d 1118. This court vacated the district court's injunction. We remanded the disability cases of the *named* plaintiffs "for any action in their pending individual review petitions as may be appropriate, including determination (in review petitions properly before the court) of whether the proper standard, as set forth in Ruling 85–28 and this opinion were applied by the Secretary when their claims were denied as not severe." *Id.* at 1126. With respect to the *class* plaintiffs, we stated that "because we assume that the Secretary will hereafter endeavor to apply the proper standards at the severity stage, we shall expect all claimants, including those who were members of the class certified by the

district court, *who have not yet exhausted their administrative remedies to do so before seeking review in the district court." Id.* (emphasis supplied). Our order did not mention the problem of class members who, while the class action progressed, may have done nothing to advance their claims in a timely fashion in the administrative pipeline, and thus might now discover that their administrative remedies had expired.

On remand plaintiffs, inter alia, moved for summary judgment seeking injunctive relief for all those members of the class whose applications were denied at step 2 *after the initiation of this litigation* yet who had failed to begin or complete the administrative review process provided in Health and Human Services regulations. The district court granted plaintiffs' motion "to the extent it seeks a determination—pursuant to the decision of the Court of Appeals—that the 5400 [now redetermined to constitute 9000 or more] individuals in question are entitled to administrative review of their applications under present severity regulations." It ordered that class members who had failed to complete their administrative remedies must be notified by the Social Security Administration that they may request review of their claims under the non-severe regulations as clarified by the Secretary's currently effective regulation, Social Security Regulation 85–28. *McDonald v. Bowen,* No. 84–2190–G (D.Mass. Jan 29, 1987). On April 10, 1987, the district court provided for the implementation of the earlier order and established time deadlines and detailed procedures for the review of various claims. *McDonald v. Bowen,* No. 84–2190–G (D.Mass. Apr. 10, 1987). The Secretary of Health and Human Services appeals from the two orders.[1]

We conclude that the district court had jurisdiction and authority sufficient for it to allow class members to claim at the conclusion of the current case the lapsed administrative review remedies that had been open to them when their applications were denied at a lower administrative level during the pendency of this case. We therefore uphold the district court's order.[2]

## II.

When remanding in our previous decision herein, we stated that "we shall expect all claimants, including those who were members of the class certified by the district court, who have not yet exhausted their administrative remedies to do so before seeking review in the district court." *McDonald,* 795 F.2d at 1126. Only in the disability cases of the named plaintiffs did we remand to the district court for "any action in their pending individual review petitions as may be appropriate, including determination (in review petitions before the court) of whether the proper standards, as set forth in Ruling 85–28," were applied to them. *Id.* We did not do the same in the cases of the other members of the class because, without a "final decision" of the Secretary and a timely appeal to the district court, their specific claims for benefits were not yet judicially reviewable. 42 U.S.C. § 405(g).

Plaintiffs-appellees now argue that the two district court orders being appealed here are simply ancillary to our previous direction to exhaust administrative remedies. If the district court had not acted, the Secretary would not allow class members who had awaited resolution of the court case to proceed administratively with their claims. The Secretary would view such claims as having lapsed because not pursued within the 60–day limitations peri-

---

**1.** The Secretary has not challenged on appeal the mechanical details of the district court's order setting deadlines and procedures to be observed by class members who now wish to pursue their dormant claims. The Secretary's challenge rests on his belief that the district court exceeded its jurisdiction and authority in ordering that class members with claims in the administrative pipeline which the Secretary feels are now stale be allowed, if they choose

and if they meet the court's timetable, to proceed with those claims before the agency and thus complete their administrative remedies.

**2.** As the Secretary has not challenged the details of the deadlines and procedures, we do not consider the propriety of the particular measures chosen.

ods applicable to review at the agency level. The district court's orders, if valid, will revive such lapsed claims in the administrative pipeline, permitting further action at the agency level on a claim-by-claim basis.

The Secretary, however, challenges the district court's authority to provide even this limited relief, which does no more than allow members of the plaintiff class to continue individually before the Secretary himself. The Secretary argues that because the class members have never reached the stage of obtaining "a final decision of the Secretary made after a hearing," 42 U.S.C. § 405(g), the district court lacked *subject matter jurisdiction* to grant them any form of judicial relief whatever—even an order which did no more than set aside the bar of the 60–day limitations period.

In making this argument, the Secretary relies upon *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), in which the Supreme Court permitted social security claimants to bring a class action in the district court but made it plain that they could do so only *insofar as the court had jurisdiction over the claims of the members of the class under 42 U.S.C. § 405(g)*. 442 U.S. at 701, 99 S.Ct. at 2558. Here, argues the Secretary, the court had jurisdiction under section 405(g) *only* over the named plaintiffs, whose claims do not figure in this appeal. The class members in question had never processed their claims to the point where court review was statutorily authorized. In the Secretary's view, the district court was without jurisdiction when it certified such claimants as class members. And because it continues to lack jurisdiction over them, the district court is without jurisdiction now to extend even the limited relief inherent in permitting the claimants to proceed with their otherwise stale administrative claims.

The question presented is a close and perplexing one. There is some initial plausibility to the Secretary's argument. Since *Weinberger v. Salfi*, 422 U.S. 749, 756–67, 95 S.Ct. 2457, 2462–68, 45 L.Ed.2d 522 (1975), it has been clear that the district court's subject matter jurisdiction over social security questions like the present is limited to that conferred by 42 U.S.C. § 405(g). Federal question jurisdiction under 28 U.S.C. § 1331 is barred by section 405(b). 422 U.S. at 756–61, 95 S.Ct. at 2462–65. And as section 405(g) only authorizes district court review of "a final decision of the Secretary made after a hearing," it might appear that a district court necessarily lacks jurisdiction over *non-final* claims still immersed in the "administrative pipeline," like those of the class members here.

However, the Supreme Court has on several occasions found jurisdiction in the district court over *non-final* claims like ours. The entering wedge appeared in *Weinberger* itself, where the Court held that the statutory requirements that the Secretary's decision be "final" and be made "after a hearing," could be waived by the Secretary. *Id.* at 767, 95 S.Ct. at 2467. This concept was expanded in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), where the Court stated that the only purely "jurisdictional" aspect of section 405(g), in the sense of being "non-waivable," was the requirement that "a claim for benefits shall have been presented to the Secretary." *Id.* at 328, 96 S.Ct. at 899. The *Eldridge* Court went on to say that while the power to determine when finality has occurred (*viz.*, to "waive exhaustion") ordinarily rests with the Secretary,

> cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate.

*Id.* at 330, 96 S.Ct. at 900.

The *Eldridge* Court also stressed that Eldridge's claim, challenging the constitutionality of terminating his benefits without a hearing, was "entirely collateral to his substantive claim of entitlement." *Id.*

*Weinberger* and *Eldridge* were both cases involving constitutional attacks upon the Secretary's procedures. The issue in *Eldridge* (*viz.*, whether the Secretary's failure to grant a hearing before shutting off disability benefits violated the due process clause of the constitution) was a particular-

ly strong example of an issue that is, in fact, clearly divorced from the facts and merits of an applicant's own disability claim. It is interesting that in both cases the Court took jurisdiction in order to reverse lower court decisions that had struck down the Secretary's own procedures.

The doctrines forged in *Weinberger* and *Eldridge,* however, provided the underpinnings for a recent case of a different cast. *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), was a class action challenging the denial of disability benefits at the step 3 level of the sequential evaluation process. The *Bowen* plaintiffs (unlike the present plaintiffs) did not assert that the Secretary's *published* regulations were invalid, but rather asserted that the Secretary had adopted an unlawful, *unpublished, behind-the-scenes policy* under which "countless deserving claimants were denied benefits." *Id.,* 106 S.Ct. at 2026. The district court found, after a trial, that the Secretary had indeed followed an illegal "clandestine" policy against those with mental ailments. *Id.* at 2027. The lower court certified a class including, inter alia, claimants who had not exhausted administrative remedies. In describing the district court's actions, the Supreme Court said,

> Relying [on *Mathews v. Eldridge* ], the [district] court concluded that this was an appropriate case in which to waive the statutory exhaustion requirement. In the court's view, both parts of the *Eldridge* test were satisfied here: the claims were collateral to any claims for benefits, and the harm imposed by exhaustion would be irreparable.

*Id.* at 2027.

The Supreme Court in *Bowen* affirmed the lower court's certification of class members who had initially claimed benefits but who, when turned down, had failed to pursue the Secretary's available remedies. The Court noted two types of claimant. The first were people who had failed to exhaust administrative remedies *before* the class action was filed. The Court justified including their otherwise stale claims within the class, on the ground that the Secre-

tary's secret policies had prevented them from realizing that they had valid grounds for seeking administrative review. *Id.* at 2031.

A second group—more comparable to the present class members—were those who had failed to obtain a final decision from the Secretary even though, at the time the class suit was filed, they "may still have had time to exhaust their administrative remedies." *Id.*

Citing *Eldridge,* the Court justified inclusion of this latter group on several grounds. It held that "the claims in this lawsuit are collateral to the claims for benefits that class members had presented administratively." *Id.* It also found that if those ill people were forced to go through the administrative process they would suffer irreparable harm. And finally, given the Secretary's improper, covert policy, the Court found that nothing practical would be gained by forcing an exhaustion of remedies:

> Under these unique circumstances, there was nothing to be gained from the compilation of a detailed factual record, or from agency expertise.

*Id.* at 2032.

The Supreme Court thus concluded that this group fell within the language of *Eldridge* which permitted a court to presume a waiver,

> where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate.

*Id.* at 2031 (quoting *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900).

The present class plaintiffs liken themselves to the class plaintiffs in *Bowen.* They contend that their attack on the Secretary's step 2 regulation, contending that it violated the enabling statute, was entirely collateral to the merits of their particular disability claims. They also argue that they would suffer irreparable harm if forced to appeal administratively, and that it was futile to seek review within the Secretary's administrative process so long as the criticized regulation was itself in place. The Secretary, they argue, could

not be expected to retract the regulation. For these reasons, plaintiffs say the district court properly took jurisdiction under section 405(g) notwithstanding the lack of a final decision and hearing of the Secretary.

If we were initially considering the broad issue of class certification in the present case, we are not so sure we would accept these arguments. This case does not involve a significant constitutional claim, as did *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, nor does it involve a claim of a covert policy which, because of its secrecy, undermined the efficacy of normal administrative and judicial review processes. *Bowen v. City of New York*, 106 S.Ct. 2022. Moreover, the challenge to the published step 2 regulations did not so clearly involve an attack on a matter wholly "collateral" to the individual claims for benefits. While the validity of the regulation is "collateral" in the sense that the regulation sets a standard that applies broadly to all claims, we doubt that the Supreme Court intended in *Bowen* to authorize the use of class actions to litigate every unexhausted rule and regulation the agency may issue. The severity regulation here, while discouraging to some borderline claimants, would not prevent a claimant, upon review, from endeavoring to show that his physical or mental ailments were in fact severe and disabling. And claimants' fundamental objections to the legality of the step 2 regulation were fully reviewable in the district court and court of appeals. We are thus not necessarily persuaded that this is a situation, as in *Bowen*, where

> there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise.

*Id.* at 2032.

This case could, therefore, fall on the side of the line subsumed in Judge Breyer's opinion in *Wilson v. Secretary of Health & Human Services*, 671 F.2d 673 (1982), where this circuit refused to allow a bypass of the exhaustion requirement. But we expressly make no determination of this one way or the other. However the need for exhaustion might be viewed as an initial matter, there are special factors leading us to affirm the district court's jurisdiction and judgment at this late stage in the litigation.

First of all, we are not at the beginning but at the end of this class action. Hereafter, subject only to the district court's authority to enforce its presently written order, the class action must terminate. A class having been certified, we are not disposed, at this final juncture, to strain to deny jurisdiction.

Second, in our previous opinion on the merits of plaintiffs' claim, we did not rule that the class was improperly certified.[3] The court below and the parties were therefore entitled to assume that we did not question the court's jurisdiction over the class members.

Third, the district court's appealed orders are extremely narrow, being limited solely to affording an opportunity for equitable redress to class members who, in possible reliance upon the ongoing class litigation, may understandably have failed to perceive the need to pursue their individual claims. The Supreme Court has held that the existence of even a meritless class action tolls the running of the statute of limitations otherwise applicable to all class members in their individual capacities. *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). The Court stated in that case,

> "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

*Id.* at 353–54, 103 S.Ct. at 2397–98 (quoting *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed. 2d 713 (1974)). In *American Pipe* and

---

**3.** *See McDonald*, 795 F.2d at 1120–21 n. 2.

*Crown Cork & Seal,* the Court underscored the fact that the tolling of the statute of limitations while the certification of a class is pending serves the purposes of the class actions and of the statute of limitations.

One of the principles informing class action suits is the interest in having only one claim instead of multiple suits. Once the complaint has been presented, there is little apparent reason for class members to present their own claims.

> To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitations period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found "superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).

*American Pipe,* 414 U.S. at 551, 94 S.Ct. at 765.

In *Crown Cork & Seal* and *American Pipe* the class certification was denied. In this case the class was certified by the district court and the claims were tried. Thus the rationale of *Crown* and *American Pipe* would seem to apply even more strongly in the situation presented here. The Third Circuit has said,

> Reliance on the pendency of a certified class action is more reasonable than the reliance on an uncertified class action which those cases [*Crown* and *American Pipe* ] approve. The certification of the class should discourage, rather than encourage, the proliferation of filings of individual actions. The distinction which is urged on us would produce the very evil which the Court sought to avoid in *American Pipe* and *Crown Cork & Seal.*

Consistency with the policies reiterated in *Crown Cork & Seal* requires that the tolling of the statute of limitations continue until a final adverse determination of class claims.

*Edwards v. Boeing Vertol Co.,* 717 F.2d 761, 766 (3d Cir.1983), *vacated on other ground,* 468 U.S. 1201, 104 S.Ct. 3566, 82 L.Ed.2d 867 (1984).

While this case differs from *Crown Cork & Seal* and *American Pipe* in that the 60–day limitations periods pertained to administrative exhaustion, the principles discussed therein are generally applicable. In *Bowen,* 106 S.Ct. at 2029, the Supreme Court reaffirmed that section 405(g)'s 60–day limitations period for *judicial review* is not jurisdictional, but rather constitutes a statute of limitations. *Eldridge,* 424 U.S. at 328 n. 9, 96 S.Ct. at 899 n. 9; *Weinberger,* 422 U.S. at 764, 95 S.Ct. at 2466. For that reason it can be waived and the courts can apply to it the "traditional tolling principle." *Bowen,* 106 S.Ct. at 2030. By the same token, administrative limitations periods are "waivable," and can be set aside by a court in those rare cases where the claimant's interest is "so great that deference to the agency's judgment is inappropriate." *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900. We hold, therefore, that the court below had jurisdiction over the class under section 405(g) sufficient to enter the two appealed orders, providing relief from the strictures of the 60–day limitations periods, and enabling class members to go forward from the point where they had left off during pendency of the class action.[4] To hold otherwise would prevent those claimants who wish to do so from having their claims reviewed by the agency on an individual basis.

We therefore affirm the orders of the district court. We make clear, however, in part because of our earlier opinion, that we regard this to be an exceptional case. We likewise make clear that except in respect to enforcement of the appealed orders, the

---

**4.** All class members meet the non-waivable jurisdictional requirement of having presented "a claim for benefits ... to the Secretary." *Mathews v. Eldridge,* 424 U.S. at 328, 96 S.Ct. at 899.

The lower court had equitable power under its section 405(g) jurisdiction to issue the appealed injunctive orders. *Califano v. Yamasaki,* 442 U.S. at 705–06, 99 S.Ct. at 2559–60.

class is dissolved and the class action terminated.

*So ordered.*